## SCOTT v. BUFFUM & A., ADMRS.

Under the provisions of chapter 106, General Statutes, upon the death of either partner, the copartnership affairs may be fully adjusted and settled in the probate court, either by the surviving partner, or the representative of the deceased partner, or by arbitration. But if not thus settled, they may be adjusted in a court of equity the same as before such statute was enacted.

Where, upon the death of one partner, his administrator has one half of the partnership property appraised as belonging to his estate, and disposes of the same knowing that there are company debts outstanding, such administrator will be charged with the whole amount of such property as against creditors of the firm, and with his just proportion of the company debts, not exceeding the whole amount of such property, as against the other member of the firm, before any of such property can be taken to pay the private debts of the deceased partner.

In such case a creditor of the partnership may prove his debt against the estate of the deceased partner, or he may collect it of the surviving partner, and such claim will not be barred, except by the general statute of limitations.

IN EQUITY. Charles W. Scott, of Winchester, in said county, complains against Lurana Buffum, of said Winchester, and Henry Starkey, Jr., of Brattleboro', in the county of Windham and State of Vermont, and says, that on or about January 1, A. D. 1861, he and one

David Buffum, 2d, then of Swanzey in said county, entered into and formed a copartnership in business, under the firm name of Buffum & Scott, for the purpose of manufacturing and selling bedsteads at said Swanzey, and that he and the said Buffum continued in said business as such copartners—each being equally interested therein—until about October 1, A. D. 1862, at which time,—both having enlisted into the sixteenth regiment New Hampshire volunteers,—they made a settlement of their private dealings with each other, and so far adjusted and settled their copartnership affairs and business, that nothing remained undisposed of and unsettled except the partnership property and liabilities, in which each was equally interested; that as the result of that settlement the said Buffum gave to the plaintiff the said Buffum's promissory note for $200, payable on demand with interest; that on June 19, A. D. 1863, the said David Buffum deceased intestate, and on September 1, A. D. 1863, the said Lurana Buffum, his widow, and said Henry Starkey, Jr., were duly appointed administrators of his estate, and accepted and entered upon the discharge of the duties of that trust; and that afterwards, upon their representation, said estate was decreed to be administered in the insolvent course.

The plaintiff further says, that at the time of the decease of said Buffum there were debts to the amount of $1,600 and upwards outstanding against and due from said firm of Buffum & Scott; that of this indebtedness $931.04 only was proved against the estate of said Buffum; and that the whole of said partnership indebtedness has since been paid and discharged by the said plaintiff with his private funds, with the exception of about $390 paid by the said defendants.

The plaintiff further says, that at the time of the decease of the said Buffum there was personal property of the value of $2,200 belonging to said firm, one undivided half of which the said Lurana and Henry caused to be inventoried as a part of the estate of said Buffum, and, on November 9, A. D. 1863, sold to the plaintiff for the sum of $1,100; that in payment and as security for said sum the plaintiff surrendered to the said Lurana and Henry the note for $200, hereinbefore mentioned, which he then held against the said Buffum and his estate, and gave to her his three promissory notes of that date, all payable on demand with interest,—one for $200, one for $300, and one for $400; that, at the time of the purchase of said undivided half of said copartnership property by the plaintiff, it was understood and agreed between the said plaintiff and the said Lurana, as administratrix,—and such understanding and agreement formed a material part of the consideration of said purchase and said notes,—that said copartnership indebtedness should be paid equally by them; and that, in case more than one half thereof should be paid in the first instance by the plaintiff, the said Lurana, administratrix as aforesaid, would deduct the amount so paid by him in excess of one half of said indebtedness from the amount due upon and secured by the plaintiff's said notes, and allow the same to him in payment so far thereof.

The plaintiff further says, that the said Lurana and Henry have never paid any part of said partnership indebtedness to the creditors of said firm, nor repaid to him any part of the sum so paid by him, as hereinbefore stated, in excess of one half thereof, or allowed any part thereof in payment of said notes, or either of them; but that, in violation of the agreement and understanding between her and the said plaintiff, the said Lurana has sold and assigned to third persons,—to whom the plaintiff has been compelled to pay the same in full,—said notes for $200 and $300; that the said plaintiff was compelled to pay, and did pay, in the month of September, A. D. 1869, upon said note for $400 the sum of $225; and that the said Lurana is threatening and intending to collect of him the remainder of said note.

The plaintiff further says, that the said Lurana and Henry, as administrators of the estate of said David Buffum, 2d, have received, as proceeds of said partnership property, and still retain in their hands, more than sufficient to pay and discharge one half of said partnership liabilities; that the private estate of said deceased was more than sufficient to pay and satisfy all his private liabilities, and that all such have been paid and satisfied; that the said Lurana and Henry have never settled their account as such administrators, and there has been no distribution of the funds remaining in their hands after payment of the private debts of said deceased; that the plaintiff has repeatedly requested them to enter into an accounting with him of the affairs of said copartnership, with the view of ascertaining and determining the amount which may be due on account of said partnership from him to the estate of said deceased, or from said estate to him, and to pay over to him any balance which should be found due to him upon such accounting: but the said Lurana and Henry have neglected and refused, and still neglect and refuse, so to do.

Wherefore the said plaintiff prays that an account may be taken of all the said copartnership transactions and dealings until the time of the decease of said David Buffum, 2d, and since; and that the said Lurana Buffum and Henry Starkey, jr., as such administrators, may be directed to pay to the plaintiff what, if anything, shall upon such account appear to be due to him from them as such administrators, the plaintiff being ready and willing, and hereby offering to pay to them what, if anything, shall appear to be due to them on account of said copartnership business and dealings; that the said Lurana may be enjoined and prohibited from attempting to collect or negotiate said note for $400 until after said account shall have been taken; and that such other orders and decrees may be made as justice shall require.

To this bill a demurrer was filed, alleging that the plaintiff was not entitled upon said bill to the relief he prays for, because he therein seeks to charge the estate of said David Buffum, 2d, the defendants' intestate, on a contract made by one administrator after the intestate's decease; and because it appears by said bill that the partnership affairs are so adjusted that there is no account to be taken; and because the plaintiff has a plain and adequate remedy at law.

Upon this demurrer it was held, at the June term, 1871, SARGENT, J., delivering the opinion of the court, that this was not an attempt to charge the estate upon a contract made with the administrator. Such a contract is stated, to be sure, rather as explanatory of the past conduct of the plaintiff, and also, perhaps, of his present position; but the court is not asked to enforce it. On the contrary, the defendants having violated it, as is admitted by the demurrer, the plaintiff now asks that the same steps may be taken which would have been necesry in the first place to settle the partnership affairs if no contract had been made.

Although something had been done towards adjusting the partnership matters by the partners themselves, yet something remained to be done. Partnership property remained undisposed of, and partnership debts unadjusted: while such was the fact, either party might resort to a court of equity to complete such settlement.

The General Statutes, ch. 190, sec. 1, provide that the supreme court shall have the power of a court of equity in cases cognizable in said court, and may hear and determine according to the cause of equity, (among other things) "in case * * * of the affairs of copartners, joint tenants or owners, and tenants in common."

This has been one of the subjects over which the supreme court has always had original equity jurisdiction, by express provision of the statute, since full equity powers were conferred upon the court in 1832. And so, when the law of 1855 was passed authorizing limited partnerships, it was specially provided that the supreme court may hear and determine, as a court of equity, all questions arising under this chapter.

There are, no doubt, many questions connected with partners and partnerships that may be settled in actions at law. See chapter 106, General Statutes. But courts of equity are not ousted of their jurisdiction because courts of law have adopted equitable principles, or because some other way has been provided for settling some of those questions where equity had originally exclusive jurisdiction; but where courts of law have now assumed the same equitable jurisdiction, both courts will continue to exercise concurrent jurisdiction, and a party may apply to either for relief, while in other cases the general rule is, that equity will not assume jurisdiction of a case where a party has a plain and adequate remedy at law.

Judge STORY says;—" It can excite no surprise that courts of equity now exercise a full concurrent jurisdiction with courts of law in all matters of partnership, and, indeed, it may be said that, practically speaking, they exercise an exclusive jurisdiction over the subject in all cases of any complexity or difficulty." 1 Story's Eq. Juris., sec. 683. See also *Heath* v. *Derry Bank,* 44 N. H. 174, and cases cited; *Walker* v. *Cheever,* 35 N. H. 339 ; *Wells* v. *Pierce,* 27 N. H. 503.

*Demurrer overruled.*

Thereupon the defendants filed an answer.

The answer admits the partnership, the death of Buffum, and that the defendants are the administrators of his estate ; that they had one half of the partnership property appraised as belonging to his estate, supposing that to be their duty ; that Buffum's half of said property was appraised at $970.75 ; that after said appraisal, said Starkey has had nothing to do with said property or the proceeds thereof, or with any negotiations pertaining thereto ; but that said Lurana has had the entire control and management of said property, and that she alone disposed of the half of the partnership property belonging to Buffum's estate to the plaintiff for $1,100, receiving a note for $200, signed by her deceased husband, and the plaintiff's notes for $800, and his verbal promise to pay the other hundred,—but denies that he has ever paid the same;—admits that he has paid all the notes he gave, though a portion of one of them had been paid since this suit was commenced, under some arrangement between the parties ; says that the defendants had no knowledge of the amount of the partnership debts outstanding, if any, and did not know whether said Buffum's estate was solvent or otherwise, but that a commissioner of insolvency upon said estate was duly appointed, with the plaintiff's knowledge, and that said Lurana supposed that the partnership debts, if any, would be proved before said commissioner for allowance against said Buffum's estate, and that it would be the plaintiff's business to see that such claims were so presented, if he intended to charge the estate of Buffum, and that the plaintiff's note which she received would be assets in her hands, as administratrix, to apply in payment of partnership debts which might be allowed by the commissioner, but not to pay any other partnership debts not thus allowed ; that the amount of partnership claims allowed · by the commissioner was $931.04, of which sum said Lurana has paid $392.23, and that she has offered the plaintiff to pay her just half of the residue so allowed, and is ready so to do on demand ; but as to any other partnership debts mentioned in the bill as paid by the plaintiff, the defendants have no knowledge, and deny the same, and deny their liability to pay him therefor.

They allege that the plaintiff, as surviving partner of said firm, had full power and authority under the law to close up and settle the partnership affairs, but chose the method above stated rather than to proceed under the statute in such case provided, under which he had a plain and adequate remedy ; that they do not know whether said Buffum's private estate is more than sufficient to pay his private debts and expenses of administration, as they have never settled their administration account. Wherefore the defendants say that there are no partnership transactions or dealings to be settled or adjusted by the court, and pray that the bill may be dismissed.

The case was heard upon bill, answer, and proofs.

*Wheeler & Faulkner*, for the plaintiff.

*Cushing* and *Hardy*, for the defendants.

SARGENT, C. J. It appears in proof that the partnership was formed in 1861, the interest of the partners being equal ; that in 1862 both partners went into the army ; that Buffum died in June, 1863 ; that in September, 1863, these defendants were appointed administrators of his estate, and accepted that trust ; that they administered the estate as insolvent ; that in appraising the property of the estate, the said Buffum's half of the partnership property was appraised at $970.75, as stock in trade ; and that there were debts of the company proved against his estate, amounting to $931.04. But all the debts of the firm were not thus proved against his estate. In November, 1863, the plaintiff purchased of Mrs. Buffum, one of the administrators, the half of the company property belonging to the Buffum estate, for $1100. He gave his notes, which have since been paid, for $800, a note which he held against the said Buffum, deceased, for $200, and whether he · has paid the other hundred or not is in dispute between him and Mrs. Buffum ; and it is not material here whether it has been paid or not. That is a matter for them to adjust.

The two hundred dollar note of Buffum would seem, upon all the evidence, to have been received instead of so much money, in payment, as far as it went, for the property purchased. We should have no doubt that Mrs. Buffum had made herself chargeable for it to the estate of her deceased husband, at the face of the note and interest, from the course she has pursued in relation to it ; for although it does not yet appear whether the estate is solvent or not in fact, yet, so far as does appear, we see nothing to indicate that it might not have been perfectly solvent if it had been properly administered. Yet it appears that she never presented this note to the commissioner on his estate to have it allowed with the other claims, so as to receive any dividend if the whole should not be paid. It is not material here, however, to undertake to settle whether the estate of Buffum is solvent or insolvent. The note was received by Mrs. Buffum at par and interest, as it would seem, in payment for this property, and that ends the matter so far as this case is concerned. Whether she shall be charged with the whole amount of the note or not, as administrator of her husband's estate, or whether that estate is solvent or not, should have been settled long ago in the court of probate, but has not been.

The whole amount of debts due from the firm was (when paid) $1633.20 ; but this includes the interest upon them, for a year or so, until paid. Of this amount, the plaintiff has paid $1240.98, and the defendants have paid $392.22. The plaintiff has collected of debts due the firm $31, and the defendants have collected $49.80. Deducting what each has collected from the amount paid by each on the firm account, and the plaintiff's balance is ($1240.98—$31) $1209.98, and the defendants' balance is ($392.22—$49.80) $342.42. Total paid, above collections, $1552.40 : the amount for each to pay, $776.20.

It is immaterial whether we cast interest upon the amount of company funds in the hands of each up to the time of these payments and then deduct them, or how the proper balances are arrived at ; but it is

apparent, at a glance, that both the plaintiff and the defendants had enough of company funds in their hands to pay their half of the company debts. Supposing the defendants are to be charged with this company property at the appraisal,—which is the most favorable view to take of the matter for them,—and reckon interest on the same for one year at five per cent.=48.54, which, added to the principal, makes ($970.75+48.54) $1019.29, from which deduct one half the amount of debts (1019.29—776.20), and it leaves a balance of $243.09, with interest thereon for some nine years, for which these defendants should account to the estate of Buffum, after paying one half of all the firm debts. This, of course, is only approximating the true result.

One way that this partnership business might have been properly settled and adjusted was for the surviving partner, Scott, to have sold out all the partnership property, paid all the partnership debts, and then have divided the surplus equally between himself and the representatives of Buffum's estate. But that course was not taken, and, so far as appears, the defendants may not have desired that it should be. They assumed the control and custody of one half of it, and had it appraised as a part of the estate, as perhaps they would have the right to do, if they chose; but, knowing as they did that there were company debts to be paid, they of course must know that this property must first be held to pay the company debts before any of it could go to pay the individual debts of either Scott or Buffum; and when the defendants not only had the property of the firm appraised as one half belonging to Buffum's estate, but assumed as they did to treat it as their own private property, and sell the same without obtaining or asking for any license to do so from the court of probate, they cannot certainly be heard to complain that some other course was not taken to settle the partnership transactions different from the one that was taken, nor can they be heard to say that they are not to be charged with this property, as administrators, at least at its appraised value, they being allowed to discharge themselves first by paying one half the company debts; for there is no doubt the creditors of the partnership could follow this property of the firm into these defendants' hands, and enforce their lien upon it for the payment of the company debts before it could be applied to pay Buffum's private debts. In this case, the company debts are all paid; but we think that, as between Scott and the estate of Buffum, the party who should pay more than his half of the firm debts might in equity properly be considered *as an assignee of those claims*, to the extent that the amount paid by him should exceed his legal proportion of the firm debts, and that *as such assignee* he could follow the company property, and enforce the creditors' lien upon it, in the hands of these defendants, so that each member of the firm should thus be made to pay his just proportion of the company debts. 2 Story's Eq. Jur., sec. 1253.

In this case, much more than half the company debts were proved against Buffum's estate. If the administrators had paid all those debts from the estate, they might have needed the same rule applied

in their favor as against Scott. The original creditors probably would not be obliged to regard these equities between the original members of the firm or their representatives, but might follow the partnership property into the hands of either member, and secure their debts. But where the debts have all been paid, the above principle may be applied in adjusting the equities between the members of the firm. In speaking of the *lien* of the partnership creditors upon the property of the firm for the payment of their debts, we do not mean that there is any specific lien upon the identical property, so that it could be followed into the hands of third persons who had purchased it without knowledge of the facts in the case, or any lien by which the specific property would be held in preference to other property, but simply that these defendants, having received one half of the firm property with full knowledge that there were company debts to be paid, will be held to hold that amount of property in trust,—first, for the payment of company debts as against creditors ; and then in trust to pay the proper proportion of those company debts, as between themselves and the other member of the firm, before the property is taken to pay the private debts of Buffum.

We find in this case, that whatever has been done by Mrs. Buffum in relation to her late husband's property and estate, has been done by the consent and with the knowledge of both the administrators, and that they are therefore both responsible for whatever has been done by Mrs. Buffum in that regard. Neither the estate of Buffum nor these defendants can in any way be injured by this arrangement. The defendants will be charged with the property of the firm that came to their hands at its appraised value, which proved to be less than its actual value ; and after adjusting the debts with this plaintiff, they will have the same balance to account for to the estate that they would have had if the company affairs had been settled up by Scott and the balance paid over to them.

But it is said that it was the plaintiff's duty to have had the debts all paid and proved before the commissioner of Buffum's estate, so that the defendants could know just what they amounted to. That might, perhaps, have been convenient had it been practicable; but we can readily see that it might not have been possible. The creditors might prove their claims against the estate or not, as they chose ; they might call on the plaintiff as surviving partner if they chose ; and they might not choose to do either until after the commission was closed, and the report returned to court and accepted. Not being obliged to prove their claims before the commissioner upon Buffum's estate, there was no statute of limitations that could apply to their claims, except the general six years' limitation which applies in ordinary cases ; so that there might be claims which the plaintiff could not adjust or obtain, and in which no payment could be made until too late to have them proved before the commissioner. But this cannot release the defendants from their liability to contribute to their payment, after having received funds of the firm with which to pay their just proportion of all the debts, and more.

There has been too much delay in this case by the defendants, because it was their duty to have settled the estate of which they were administrators years ago. As soon as the debts were paid, they should have adjusted their share of them with Scott, and then have settled Buffum's estate at once. If they could not agree how to settle with Scott, they should have instituted proceedings similar to the present, and thus procured a settlement of the partnership matters, and, when these were adjusted, should have closed up the settlement of the estate.

Much is said about Buffum's estate being insolvent. The evidence does not show conclusively how that is, nor is it of any consequence here how that fact is. It is sufficient for this case that there was partnership property enough, and more, to pay all the partnership debts; and those debts are first to be paid from the partnership property, and the balance should half of it then go to pay Buffum's private debts;— and whether there shall be enough to pay them or not is of no account here.

Nor has the sale of the property by Mrs. Buffum to Scott anything to do with this case. She sold it for $1,100, which shows that it was worth more than the appraisal, so that no injustice can be done the administrators by charging them with the partnership property at the appraisal. Whether she has received her pay or not, or how she received it, was a matter of private arrangement between the parties. But that question has nothing to do with the settlement of this case.

The court of probate, when these administrators come to settle the estate of Buffum, may, if the judge think proper, hold them to pay or to account to the estate for the difference between one half of the company debts and the $1,100 for which they sold the half of the company property, with interest thereon. But that question is not before us. It is shown here that there was company property enough to pay the company debts; that these defendants have received one half of it; and we think they should pay just half of the company debts and interest out of it first, and then account to the estate for any balance which the court of probate may charge them with, to go for the benefit of Buffum's estate.

A master may be appointed to find how much is due the plaintiff, and to settle the whole matter.

*Master appointed.*